## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE ZAMIAS, ESTATE OF ) <br> MARIANNA ZAMIAS, DECEASED, ) <br> DAMIAN ZAMIAS, individually and as co- ) <br> executor of the Estate of Marianna Zamias, ) <br> STEPHEN ZAMIAS, individually and as co- ) <br> executor of the Estate of Marianna Zamias, ) <br> ESTATE OF SAMUEL ZAMIAS, ) <br> DECEASED, Kathleen Zamias, Executor, ) <br> ) | Case No. 3:17-cv-153 |
| Plaintiffs, ) <br> ) | JUDGE KIM R. GIBSON |
| v. ) <br> ) | |
| FIFTH THIRD BANK, ) <br> ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

### I.      Introduction

Pending before the Court are two motions: (1) a Motion to Remand filed by Plaintiffs (the "Zamias Guarantors") (ECF No. 7) and (2) a Motion to Dismiss filed by Defendant Fifth Third Bank ("Fifth Third"). (ECF No. 4.) The Motions are fully briefed (*see* ECF Nos. 4, 7, 15, and 25) and are ripe for disposition.

For the reasons that follow, the Court will **DENY** the Zamias Guarantors' Motion to Remand. (ECF No. 7.) The Court will **GRANT IN PART** and **DENY IN PART** Fifth Third's Motion to Dismiss. (ECF No. 4.)

### II.      Jurisdiction

This Court has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Venue is proper because a substantial part of the

events giving rise to the dispute occurred in the Western District of Pennsylvania. 28 U.S.C. § 1391.

## III. Background

### A. Factual History[1]

This dispute arises from real estate loans made on the eve of the Financial Crisis of 2007-2008 to facilitate the construction of shopping malls in Eastern Pennsylvania. (*See generally* ECF No. 1-2 at ¶¶ 8-18.)

In 2007, Fifth Third executed a $20,000,000.00 construction loan with Taylor Associates (the "Taylor Loan") to finance the construction of a mall in Taylor Borough, Lackawanna County. (*Id.* at ¶¶ 9, 12, 13.) George Zamias, Marianna Zamias, Damian Zamias, Samuel Zamias, and Stephen Zamias (the "Zamias Guarantors"), and Louis Nicozisis, Helen Nicozisis, and John Politis (the "Non-Zamias Guarantors") executed a Continuing Guaranty and Suretyship Agreement for the full amount of the Taylor Loan. (*Id.* at ¶ 14.)

In 2008, Fifth Third executed an $11,400,000.00 construction loan with Pittston Associates (the "Pittston Loan") to finance the construction of a mall in Pittston Township, Luzerne County. (*Id.* at ¶¶ 10, 16.) The Zamias Guarantors and the Non-Zamias Guarantors executed a Continuing Guaranty and Suretyship Agreement for the full amount of the Pittston Loan. (*Id.* at ¶ 17.)

Fifth Third extended these loans despite knowing that they were not adequately collateralized. (*Id.* at ¶ 18.) Furthermore, at all relevant times, Fifth Third knew that Damian, Stephen, and Samuel Zamias were beneficiaries of a life insurance policy that would provide

---

[1] The facts contained in this section are derived from the Zamias Guarantors' Complaint, unless otherwise indicated. The Court accepts these facts as true for the sole purpose of deciding the pending motions.

2

them with "substantial death benefit payment[s] upon the death of both George and Marianna Zamias." (*Id.* at ¶ 19.)

The Financial Crisis hit the Taylor and Pittston projects (together "the Projects") hard. (*Id.* at ¶ 21.) Multiple tenants terminated their commitments. (*Id.*) Around the same time, "Fifth Third ceased funding the Projects." (*Id.* at ¶ 22.) As a result, the Projects failed to pay their bills on time, causing creditors to file merchants' liens. (*Id.*) Construction on the Projects was also delayed. (*Id.*)

Neither of the Projects had been completed by the time that the Taylor and Pittston Loans (together "the Loans") matured. (*Id.* at ¶¶ 24-26.) After the Loans matured, Fifth Third modified each loan and made each modification effective retroactively to their original maturity dates solely to comply with federal regulations. (*Id.*) These modifications are described below.

The Taylor Loan matured on June 1, 2009. (*Id.* at ¶ 24.) The parties amended the Taylor Loan on September 29, 2009 by executing the "Taylor First Loan Modification," which amended the promissory note (now the "Restated Note") and reduced the loan balance to $17,245,500.00. (*Id.* at ¶ 24.) The parties modified the Taylor Loan a second time on December 28, 2011, extending the maturity date to January 5, 2012. (*Id.* at ¶ 27.) The Zamias and Non-Zamias Guarantors executed new guaranties for these amendments to the Taylor Loan. (*Id.* at ¶¶ 24-26.)

The Pittston Loan matured on July 1, 2010. (Id. at ¶ 26.) The parties amended the Pittston Loan on September 10, 2010 by executing the "Pittston Forbearance Agreement," which reduced the principal to $9,925,000.00 and extended the expiration date to July 5, 2012. (*Id.* at ¶¶ 26.) The Zamias and Non-Zamias Guarantors executed new guaranties for the Pittston Forbearance Agreement. (*Id.* at ¶¶ 24-26.)

By late 2011, the Projects were worth "substantially less" than the value of the Loans. (*Id.* at ¶ 29.) Fifth Third allowed the Non-Zamias Guarantors to "buy out their guarantees for approximately $1,000,000.00 each." (*Id.* ¶ 32.) However, Fifth Third refused to give the Zamias Guarantors an opportunity to buy out their guarantees because Fifth Third believed that it could collect in full from the Zamias Guarantors once George and Marianna Zamias died and their heirs collected their substantial life insurance benefits.[2] (*Id.*)

To achieve its scheme to collect the life insurance benefits owed to Damian, Stephen, and Samuel Zamias, Fifth Third needed to keep the Taylor and Pittston Loans "on the books" until George and/or Marianna Zamias died. This required that Fifth Third "bridge the valuation gap" on the Projects; Fifth Third needed to make it appear that "the Loans were sufficiently collateralized" to comply with federal regulations. (*Id.* at ¶¶ 33-35.) Fifth Third accomplished this by entering into forbearance agreements with the parties on both loans in March of 2012. (*Id.* at ¶¶ 36-40.)

To bridge the valuation gap on the Taylor Loan, Fifth Third executed a "Forbearance Agreement" and a "Second Modification of the Loan Agreement." (*Id.* at ¶ 37.) Through these modifications to the Taylor Loan, Fifth Third: (1) further reduced the balance by $5,000,000.00 to $12,245,000.00, (2) required Taylor Associates and Pittston Associates to execute a new note (the "Term Note") for $5,000,000.00 (effectively nullifying the $5,000,000.00 reduction in the overall balance), (3) required the Zamias Guarantors to guarantee the new Term Note, and (4) "required the Zamias Guarantors to execute pledges and collateral assignments of the partnership interests

---

[2] As noted above, the Zamias Guarantors had guaranteed the loans from Fifth Third to Taylor Associates and Pittston Associates.

4

of numerous other projects . . . in which they had interests."[3] (*Id.* at ¶ 37.) The reorganization of the Taylor Loan was accomplished on March 28, 2012 when the parties executed a "Forbearance Agreement" and a "Second Modification of the Loan Agreement." (*Id.* at ¶ 38.)

To bridge the valuation gap on the Pittston Loan, which was already in forbearance, Fifth Third "demanded" that the Zamias Guarantors "pledge and assign [to Fifth Third] their partnership interest in two projects"[4] and mortgage Fifth Third land "that was already mortgaged to another bank." (*Id.* at ¶ 36.) In other words, Fifth Third "strong arm[ed]" the Zamias Guarantors into pledging assets that were "already pledged as collateral to other lenders." (*Id.*) The reorganization of the Pittston Loan was accomplished on March 28, 2012, when the parties executed the "First Amendment to Forbearance Agreement." (*Id.*)

Fifth Third also required the Zamias Guarantors to execute Amended Guaranties for the repackaged Taylor and Pittston Loans.[5] (*Id.* at ¶ 39.)

Fifth Third also fixed a "release price" to each of the "pledged" properties. (*Id.* ¶ 43.) When one of the pledged properties was refinanced or sold, Fifth Third would "insert itself into the process in an attempt to attempt to shake down" the parties for additional money.[6] (*Id.*) Moreover,

---

[3] These projects included: Beckley Plaza in West Virginia; Bel Air Plaza in Johnstown, Pennsylvania; Westwood Plaza in Johnstown, Pennsylvania; White Oaks Plaza in Johnstown, Pennsylvania; Grove City Plaza in Grove City, Pennsylvania; and University Park Plaza in Johnstown, Pennsylvania. (*Id.* at ¶ 37.)

[4] East Hills Plaza in Johnstown, Pennsylvania, and HT Commons in Tamaqua, Pennsylvania. (*Id.* at ¶ 35.)

[5] Fifth Third required the Zamias Guarantors to agree to guarantee the repackaged Taylor and Pittston Loans despite knowing that the borrowers, Taylor Associates and Pittston Associates, did not have sufficient capital to make payments. (*Id.* at ¶ 53.) Taylor Associates and Pittston Associates did not even have sufficient funds to "close" the reorganized agreements in March of 2012. (*Id.*) But Fifth Third "allowed the loans to close anyway in order to fool regulators." (*Id.*)

[6] According to the Complaint, "Fifth Third inserted itself into [each] sale and/or refinance of these properties in order to shake more money out of the Zamias Guarantors, typically under threat of blowing up the transaction and costing the Zamias Guarantors significant additional costs and damage to their reputations." (*Id.* at ¶ 51.)

the release prices "bore no rational relation to any sort of industry accepted form of valuation but were instead manufactured . . . by Fifth Third . . . in order to make the [p]ledges appear to have value to federal regulators and thereby justify the Term Note that should have been written down altogether." (*Id.* at ¶ 45.) While several of the "pledged" properties have been foreclosed or refinanced, only two of them sold at their "release prices,"[7] indicating that the "release prices" bore no relation to the actual value of the pledged properties. (*Id.* at ¶¶ 45, 50.) Fifth Third coerced the Zamias Guarantors into pledging these properties by threatening to confess judgment, despite knowing that assigning these pledges violated the loan agreements for each of the pledged properties. (*Id.* at ¶ 52.)

As a result of the March 2012 reorganization, the Zamias Guarantors assumed all liability for the repackaged loans and faced increased financial exposure due to Fifth Third's demanding that they pledge partnership interests in other projects to make the Loans conform to federal regulations. (*Id.* at ¶ 40.) The Zamias Guarantors objected to Fifth Third's "deceitful and inequitable actions," but Fifth Third threatened to confess judgment unless the Zamias Guarantors agreed to the modifications.[8] (*Id.* at ¶ 41.)

---

[7] The Zamias Guarantors paid Fifth Third the complete "release price" on both the Grove City and the University Park properties. (*Id.* at ¶ 60.)

[8] Representatives from Fifth Third harassed and intimated the Zamias Guarantors "[t]hroughout the life" of the Loans. (*Id.* at ¶ 69.) In total, "approximately 20 different bank representatives from Fifth Third worked on the project in order to systematically wear down and intimidate [Taylor Associates and Pittston Associates] and the Zamias Guarantors." (*Id.*) For instance, Anthony Tavrell, who represented Fifth Third during the March 2012 reorganization, sent "hundreds of texts, phone calls and emails, at all times of the day and night . . . intimidated employees of the Zamias Guarantors[,] and acted like a 'loan shark' during the 2012 forbearance negotiations." (*Id.* at ¶ 70.) He also "called Starwood Mortgage and other lenders in order to extort money and acted like a loan shark during closings thereby making it impossible to close." (*Id.* at ¶ 71.) Mr. Tavrell also misrepresented the value of the collateral that Fifth Third received from the Zamias Guarantors during the 2012 reorganization to make it appear more valuable than it actually was and deceive regulators. (*Id.* at ¶ 72.) In fact, all of the collateral that the Zamias Guarantors pledged "was

Samuel Zamias, one of the Zamias Guarantors, died in September 2013. (*Id.* at ¶ 57.) Fifth Third filed a $20,000,000.00 claim against Samuel Zamias's estate. (*Id.* at ¶ 58) Fifth Third's claim is "false" and "inflated," (*id.* at ¶ 69), has prevented Samuel Zamias's widow from closing her late husband's estate (*id.* at ¶ 58), and has caused her to experience severe emotional distress. (*Id.*)

On October 13, 2013, representatives of the Zamias Guarantors met with Brent Liebler, their loan officer from Fifth Third, and Mr. Liebler's superior, David Puera, in Columbus, Ohio. (*Id.* at ¶ 62.) Mr. Puera told the Zamias Guarantors that they were "good borrowers that had done everything that Fifth Third had asked of them" and stated that their outstanding loans would be resolved in the near future. (*Id.* at ¶ 63.) Mr. Puera promised that "no matter what happened, Fifth Third would not pursue the Zamias Guarantors personally." (*Id.*)

In January 2014, Fifth Third required Taylor Associates, Pittston Associates, the Zamias Guarantors, and Samuel Zamias's widow (acting as Executrix for Samuel Zamias's estate) to execute amended forbearance documents on both Loans. (*Id.* at ¶ 59.) For the Taylor Loan, the parties executed an "Amendment to the Forbearance Agreement," an "Amended and Restated Promissory Note," and "Second Amended and Restated Guaranties for both the Term Note and [the] Restated Note" on January 29, 2014. (*Id.* at ¶ 61.) The same day, the parties executed a "Second Amendment to the Forbearance Agreement" on the Pittston Loan. (*Id.* at ¶ 60.)

The Zamias Guarantors relied on Mr. Puera's assurances that Fifth Third would not pursue the Zamias Guarantors personally when they executed the forbearance documents on January 29, 2014. (*Id.* at ¶ 63.) Moreover, while Fifth Third could and should have reached a

---

either foreclosed upon, or was worth significantly less than the amount that Fifth Third represented to regulators." (*Id.*)

settlement with the Zamias Guarantors in January 2014, Fifth Third required the Zamias Guarantors to undertake the above-mentioned reorganization solely because Fifth Third desired to "keep the loans alive in order to collect on the [life i]nsurance policy." (*Id.* at ¶ 59.)

In 2015, Taylor Associates and Pittston Associates filed for bankruptcy and sold the Projects at Fifth Third's direction. (*Id.* at ¶ 64.) The Pittston Project sold for $4,250,000.00. (*Id.* at ¶ 66.) The Taylor Project was deeded back to Fifth Third during bankruptcy (*id.* at ¶ 67), but Fifth Third failed to credit Taylor Associates, Pittston Associates, and/or the Zamias Guarantors with any value for the Taylor Project and never disclosed its appraisal value. (*Id.*) Because the parties understood that the bankruptcy dispositions would fail to repay the full balances that Taylor Associates and Pittston Associates owed on the Loans, Fifth Third and the Zamias Guarantors executed a "Deficiency and Settlement Agreement" on December 22, 2015. (Ex. A of Fifth Third's Motion to Dismiss, ECF No. 4-2.) Pursuant to the Deficiency and Settlement Agreement, the Zamias Guarantors executed a five-year "Deficiency Note" in the amount of $5,000,000.00 (*Id.* at ¶ 2(a)(iii).) The Deficiency Note included a confession of judgment clause. (Ex. L of Fifth Third's Motion to Dismiss, ECF No. 4-13 at ¶ 20.)

## B. Procedural History

In March 2017, Fifth Third filed two complaints in confession of judgment against the Zamias Guarantors in the Court of Common Pleas in Cambria County. (ECF No. 1-2 at ¶ 73-75; ECF No. 4 at 8.) Fifth Third alleged that the Zamias Guarantors defaulted on the Taylor Term Note and the Taylor Deficiency Note, both of which the Zamias Guarantors had personally guaranteed. (*See* ECF No. 4 at 8.) Judgment was confessed in both cases. (ECF No. 1-2 at ¶¶ 77-

8

75.) The Zamias Guarantors responded by filing petitions to strike/and or open the judgments. (*Id.* ¶ 76.) Both cases remain pending. (*Id.*)

On June 26, 2017, the Zamias Guarantors filed this action in the Court of Common Pleas of Cambria County, Pennsylvania. (*See* ECF No. 1-2.) The Zamias Guarantors asserted six counts against Fifth Third: (1) fraud; (2) tortious interference with contractual relations; (3) breach of duties of good faith and fair dealing; (4) accounting; (5) fraud in the inducement; and (6) predatory lending practices. (ECF No. 1-2 at 17-23.) Fifth Third removed the case to this Court on August 18, 2017. (ECF No. 1.)

Currently before the Court are (1) the Zamias Guarantors' Motion to Remand Based on Abstention (ECF No. 7) and (2) Fifth Third's Motion to Dismiss. (ECF No. 4.) The Court will address these in turn.

## IV.    The Zamias Guarantors' Motion to Remand

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821); *Hamilton v. Bromley*, 862 F.3d 329, 331 (3d Cir. 2017). Accordingly, if jurisdiction exists, federal courts have a "virtually unflagging obligation" to exercise it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976) (citation omitted); *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014).

"There are, however, narrow exceptions to this general rule. These exceptions fall under the so-called abstention doctrine." *Wells Fargo Bank, N.A. v. Carnell*, No. 3:16-CV-130, 2017 WL 1498087, at *3 (W.D. Pa. Apr. 25, 2017) (Gibson, J.) "Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or agency

will have the opportunity to decide the matters at issue." *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303 (3d Cir. 2004) (quoting *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission*, 791 F.2d 1111, 1114 (3d Cir. 1986)) (internal quotation marks omitted). "The [abstention] doctrine is rooted in concerns for the maintenance of the federal system." *Hi Tech Trans, LLC*, 382 F.3d at 303.

The Zamias Guarantors ask the Court to remand this case on the basis of *Colorado River* Abstention. *See Colorado River Water Conservation District*, 424 U.S. 800. "The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (citing *Colorado River*, 424 U.S. 800, 96 S.Ct. 1236). "Abstention under *Colorado River* is 'considerably more limited than the circumstances appropriate for abstention' under other doctrines." *Nat. Collegiate Athletic Ass'n v. Corbett*, 25 F. Supp. 3d 557, 570–71 (M.D. Pa. 2014) (quoting *Colorado River*, 424 U.S. at 818).

"Whether [*Colorado River*] abstention is appropriate is a two-part inquiry." *Nationwide*, 571 F.3d at 307. "The initial question is whether there is a parallel state proceeding that raises 'substantially identical claims [and] nearly identical allegations and issues.'" *Id.* (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n. 5 (3d Cir. 2005)). "If the proceedings are parallel, courts then look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." *Nationwide*, 571 F.3d at 307-08 (quoting *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999)).

**A.** **The Court Need Not Reach the Question of Whether the State and Federal Cases Are Parallel**

Following the approach taken by the Third Circuit in *Nationwide*, the Court "need not take up the parallel action analysis here because, even presuming parallelism, this action does not present the type of circumstances warranting abstention." *Nationwide*, 571 F.3d at 308. Accordingly, the Court will proceed to the second inquiry—whether exceptional circumstances exist that warrant abstention under the *Colorado River* doctrine.

**B.** ***Colorado River*** **Abstention is Not Warranted Because Exceptional Circumstances Do Not Exist**

Courts in the Third Circuit look to six factors to determine whether "extraordinary circumstances" exist that warrant *Colorado River* abstention: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Id.* (quoting *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999)). "While the Supreme Court has enumerated six factors, 'the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Gordon v. E. Goshen Twp.*, 592 F. Supp. 2d 828, 843 (E.D. Pa. 2009) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927 (1983)).

The first factor—which court first assumed jurisdiction over the property—weighs against abstention. The parties agree that "there is no specific property at issue." (ECF No. 7 at ¶ 32; ECF

11

No. 15 at 12.) However, contrary to the Zamias Guarantors' contention, "the presence of a neutral factor necessarily weighs against abstention." *Hartford Life Ins. Co. v. Rosenfeld*, No. CIV.A. 05-5542 (KSH), 2007 WL 2226014, at *7 (D.N.J. Aug. 1, 2007). Accordingly, the Court agrees with Fifth Third that the first factor favors this Court exercising its jurisdiction.

The second factor—the inconvenience of the federal forum—also weighs against abstention. The Zamias Guarantors acknowledge that the state court in Ebensburg, Pennsylvania and the federal court in Johnstown, Pennsylvania are equally convenient for the parties. (*See* ECF No. 7 at ¶ 33.) But the Zamias Guarantors fail to acknowledge that "[e]qual convenience is not neutral; it weighs against issuing a stay because it means that litigating in federal court is not inconvenient." *U.S. Claims, Inc. v. Smolar*, 574 F. Supp. 2d 487, 490 (E.D. Pa. 2008). Accordingly, this factor weighs in favor of this Court exercising its jurisdiction.

The third factor—avoiding piecemeal litigation—also weighs against abstention. In the Third Circuit, "the 'avoidance of piecemeal litigation' factor is met . . . only when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan v. Johnson*, 115 F.3d 193, 197–98 (3d Cir. 1997) (citing *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n*, 791 F.2d 1111, 1118 (3d Cir. 1986)); *Kinsella-Holtje v. Estate of Fenton, No.* CIV.A. 15-306 MAS, 2015 WL 3649177, at *3 (D.N.J. June 11, 2015) (same). More specifically, "there must be a strongly articulated *congressional* policy against piecemeal litigation in the specific context of the case under review." *Ryan*, 115 F.3d at 198 (emphasis added); *Harris*, 2014 WL 5795687, at *4 (same); *Nat'l Liab. & Fire Ins. Co. v. LP Trucking, LLC*, No. CV 15-5449 (JBS/KMW), 2017 WL 2829602, at *5 (D.N.J. June 30, 2017) (same). Thus, "[t]he presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to

12

consolidate multiple lawsuits for unified resolution in the state courts." *Ryan*, 115 F.3d at 198; *McMurray v. De Vink*, 27 F. App'x 88, 92 (3d Cir. 2002) (same); *Harris*, 2014 WL 5795687, at *4 (same). The Zamias Guarantors have not identified any congressional policy—much less a strongly articulated one—suggesting that Congress desires to avoid piecemeal litigation of any of the claims involved in this case.[9] Accordingly, this factor weighs against abstention.

The fourth factor—the order in which jurisdiction was obtained—weighs towards abstention. The state proceedings were initiated first: Fifth Third filed complaints in confession of judgment in the Court of Common Pleas in Cambria County, Pennsylvania, on March 14, 2017 (*see* ECF No. 7 at ¶¶ 1, 5) while the Zamias Guarantors did not file this case until June 26, 2017. (*Id.* at ¶ 19.) However, this Court "must consider more than which action was filed first . . . The comparative progress made in the state cases and this one also needs to be considered." *Nationwide*, 571 F.3d at 309. A considerable amount of discovery has taken place in the state cases; the parties have exchanged interrogatories, requests for admission and requests for discovery documents, and four depositions have been taken.[10] (*Id.* at ¶¶ 15, 16.) On the other hand, progress has also been made in this case; both parties briefed the instant Motion for Remand Based on Abstention (*see* ECF Nos. 7, 15) and the pending Motion to Dismiss. (*See* ECF Nos. 4, 25.) Overall, the Court finds that slightly more progress has been made in the state cases. Accordingly, this factor somewhat favors abstention.

---

[9] The Zamias Guarantors merely assert that the state and federal cases involve "identical parties and identical issues." (ECF No. 7 at ¶ 36.) While the Court doubts that the issues in the state and federal cases are truly "identical," the mere fact that the Zamias Guarantors cannot point to a congressional policy against piecemeal litigation strongly factors against abstention.

[10] At the time they briefed the Motion for Remand Based on Abstention, the parties had arrived at a discovery impasse in the state cases and were awaiting a decision on a motion to compel.

The fifth factor—whether federal or state law controls—weighs against abstention. As the Third Circuit explained, "while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law." *Ryan*, 115 F.3d at 199; *3G Wireless, Inc. v. Metro PCS Pennsylvania LLC*, No. CV 15-6319, 2016 WL 823222, at *8 (E.D. Pa. Mar. 2, 2016) (same). Contrary to the Zamias Guarantors' argument that the fact that this case arises under state law favors abstention (*see* ECF No. 7 at ¶ 44), this factor only favors abstention in "rare circumstances" where the state law issues are "so intricate and unsettled that resolution in the state courts might be more appropriate . . . ". *Ryan*, 115 F.3d at 199-200; *see also Greg Welteroth Holding, Inc. v. Sun*, No. 4:13-CV-00809, 2013 WL 12120271, at *4 (M.D. Pa. Dec. 13, 2013) (abstention unnecessary when federal district court in Pennsylvania must apply Pennsylvania state law because it is "a body of law that this Court is frequently called upon to apply and interpret.") This case is governed by Pennsylvania law and does not present "rare circumstances" that would justify abstention. Accordingly, this factor weighs against abstention.

The sixth factor—whether the state court will adequately protect the interests of the parties—also weighs against abstention. As the Third Circuit stated, "the mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction." *Ryan*, 115 F.3d at 200. Moreover, "this factor is normally relevant only when the state forum is *in*adequate." *Id.* (emphasis in original). "When the state court is adequate . . . this factor carries little weight." *Id.*

(internal citations omitted.) There is no evidence that the state court is inadequate here. Accordingly, this factor weighs against abstention.[11]

### C.    Conclusion

In conclusion, the Court finds that only one of the six factors weighs in favor of abstention. Moreover, the Zamias Guarantors have failed to identify any "extraordinary circumstances" in this case, and the Court is not aware of any. In the absence of "extraordinary circumstances," this Court cannot, and will not, abdicate its "unflagging obligation" to exercise the jurisdiction bestowed by Congress. *See Colorado River*, 424 U.S. at 818. Accordingly, the Court will DENY the Zamias Guarantors' Motion to Remand Based on Abstention. (ECF No. 7).

## VI.    Fifth Third's Motion to Dismiss

### A.    Standard of Review

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the

---

[11] To support their argument that this factor favors abstention, the Zamias Guarantors merely assert that "there is no evidence whatsoever to suggest that the state courts of Pennsylvania cannot adequately protect the rights of both parties in this dispute." (ECF No. 7 at ¶ 45.) This argument is wholly unconvincing. If the Court accepted Plaintiffs' argument, it would be compelled to abdicate jurisdiction in nearly every diversity case. As the Third Circuit has stated:

> [I]t is the singular role of Congress to amend or repeal the diversity statute, 28 U.S.C. § 1332. While this issue has generated much controversy and a number of legislative proposals to do just that, none has yet been enacted. Until such time as that may happen, the federal courts have no choice but to apply the statute faithfully and in accordance with well-settled law.

*Ryan*, 115 F.3d at 200.

15

defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[12] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, *556* U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Before turning to the merits of Fifth Third's Motion to Dismiss, the Court will determine whether it will, for the purposes of deciding the pending Motion to Dismiss, consider several

---

[12] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675-79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

releases which were not referenced in the Zamias Guarantors' Complaint but which Fifth Third attached as exhibits to its Motion to Dismiss. (*See* ECF No. 4, Exhibits E, H, I, J, K, A.) As explained below, the Court finds that the releases are not "integral" to the Zamias Guarantors' claims. Accordingly, the Court will not consider the releases at the motion to dismiss stage.

### B.     The Court Will Not Consider the Releases at the Motion to Dismiss Stage

Fifth Third contends that Plaintiffs "repeatedly agreed to release Fifth Third from any and all claims they might ever have arising out of the Taylor Loan, the Pittston Loan, the Taylor Term Note, and any related documents" and asserts that these releases foreclose the Zamias Guarantors from prevailing on any of their claims.[13] (ECF No. 4 at 10.) Fifth Third contends that the Court may consider the releases at the motion to dismiss stage because (1) the releases were "integral" to the Zamias Guarantors' Complaint and (2) because, in the Third Circuit, district courts may consider the "release" affirmative defense at the motion to dismiss stage. (ECF No. 4 at 9-10.) In response, the Zamias Guarantors argue that the Court may not consider the releases at this stage of the proceedings. (ECF No. 25 at 24.)

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 F. App'x 92, 95 (3d Cir. 2014) ("Generally, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.") (internal citations omitted). "However, an

---

[13] The Court will not discuss the content of the purported releases in great detail here because the Court will not consider the releases at the motion to dismiss stage.

exception to the general rule is that a 'document *integral to or explicitly relied upon* in the complaint'

may be considered 'without converting the motion to dismiss into one for summary

judgment.'" *Schmidt*, 770 F.3d at 249 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

1426 (3d Cir. 1997)) (emphasis in original); *see also Schuchardt v. President of the United States*, 839

F.3d 336, 353 (3d Cir. 2016) (stating that a court deciding a 12(b)(6) motion may consider

"document[s] *integral to or explicitly relied upon* in the complaint") (emphasis in original) (internal

citations omitted); *Borough of Moosic*, 556 F. App'x at 95 ("A court may consider an undisputedly

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document.") (internal citations omitted).[14]

A release is an affirmative defense that must be asserted in a responsive pleading. Fed. R.

Civ. P. 8(c); *see, e.g., U.S. ex rel. Wallace & Pancher Const., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No.

3:12-CV-197-TFM, 2013 WL 981445, at *4 (W.D. Pa. Mar. 13, 2013). "The law of [the Third] Circuit,

however, permits a party to submit such a defense by motion if it is apparent on the face of the

complaint and no development of the record is necessary." *U.S. ex rel. Wallace & Pancher Const.,*

*Inc.*, 2013 WL 981445, at *4 (citing *Rycoline Products, Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d

Cir. 1997)); *see PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 525 (W.D. Pa. 2011)

(considering release at the motion to dismiss stage when the release was attached to the complaint

and formed the basis of the relief requested by the plaintiff); *see also Three Rivers Motors Co. v. Ford*

---

[14] "The rationale underlying this exception is that the primary problem raised by looking to documents
outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice
. . . and has relied upon these documents in framing the complaint." *Schmidt*, 770 F.3d 241 at 249 (internal
citations omitted).

18

*Motor Co.*, 522 F.2d 885, 897 (3d Cir. 1975) (reversing and remanding when district court refused to consider release at motion to dismiss stage).

The Court finds that the releases are neither "explicitly relied upon" by nor "integral to" the Complaint. The Complaint does not reference the releases. (*See*, generally, ECF No. 1-2.) Moreover, the Zamias Guarantors' claims are in no way "based" on the releases.[15] Accordingly, the Court will not consider the releases at the motion to dismiss stage.

As noted above, the Zamias Guarantors asserted six counts against Fifth Third: (1) fraud; (2) tortious interference with contractual relations; (3) breach of duties of good faith and fair dealing; (4) accounting; (5) fraud in the inducement; and (6) predatory lending practices. (ECF No. 1-2 at 17-23.) Fifth Third moves to dismiss these claims. (*See* ECF No. 4.) The Court will now discuss Fifth Third's motion to dismiss as it pertains to each of the claims.

## C. The Court Will Dismiss the Zamias Guarantors' Fraud and Fraudulent Inducement Claims (Counts 1 and 5)[16]

### 1. The Parties' Arguments

The Zamias Guarantors contend that Fifth Third committed fraud (Count 1) by (1) "intentionally making false representations regarding the collateral for the loans and grossly

---

[15] The Zamias Guarantors asserted six counts against Fifth Third: (1) fraud; (2) tortious interference with contractual relations; (3) breach of duties of good faith and fair dealing; (4) accounting; (5) fraud in the inducement; and (6) predatory lending practices. (ECF No. 1-2 at 17-23.) None of these claims relies on the releases. Moreover, while the releases are contained in the various loan contracts, the Zamias Guarantors have not asserted a separate breach of contract claim.

[16] While the Zamias Guarantors brought one count of "fraud" (Count 1) and a separate count of "fraud in the inducement" (Count 5), the Court construes both of these claims as "fraud in the inducement" claims. In both claims, the Zamias Guarantors assert that Fifth Third intentionally misrepresented to the Zamias Guarantors that it would not pursue them personally for their guaranties of the Taylor Loans and the Pittston Loans. Accordingly, both claims are founded upon the Zamias Guarantors' assertion that Fifth Third fraudulently induced them to execute contracts based on the false promise that Fifth Third would not pursue collection from them personally. Accordingly, the Court will discuss both counts in this section.

19

misstat[ing] the value of the collateral" and (2) by "ma[king] intentional misrepresentations regarding its intent to pursue personal guaranties signed by the Plaintiffs." (ECF No. 1-2 at ¶¶ 83-84.) The Zamias Guarantors allege that if Mr. Peura had not stated to them at the October 10, 2013 meeting in Columbus, Ohio that Fifth Third would "not pursue the Zamias Guarantors personally," they would not have entered into "all such documents that followed." (ECF No. 25 at 20.) Thus, the Zamias Guarantors allege that Fifth Third fraudulently induced them to execute the January 29, 2014 Additional Forbearance on the Taylor Loan (*see* ECF No. 4, Exhibit H), the January 29, 2014 Second Amended Forbearance on the Pittston Loan (*see id.* at Exhibit K), and the Deficiency and Settlement Agreement. (*See id.* at Exhibit A.)

The Zamias Guarantors also allege a separate count of "fraud in the inducement" (Count V). In this Count, the Zamias Guarantors reiterate their allegation that Mr. Peura fraudulently induced them to sign the Guaranty for the Taylor Loan by assuring the Zamias Guarantors that Fifth Third would not pursue them personally. (*Id.* at ¶¶ 112-15.)

In response, Fifth Third asserts that the Zamias Guarantors' fraud claim fails because (1) the parol evidence rule bars evidence of the conversations that Mr. Peura had with the Zamias Guarantors because all of the contracts in question contained integration clauses (ECF No. 4 at 13-15); (2) the Zamias Guarantors failed to plead fraud with particularity (*id.* at 15-16); (3) the Zamias Guarantors did not plead an actionable misrepresentation because any false statements regarding the value of the collateral were made to "unidentified government regulators" rather than the Zamias Guarantors (*id.* at 16-17); and (4) the Zamias Guarantors did not plead justifiable reliance because (a) they did not have personal knowledge of the alleged fraudulent statements that Fifth Third made to government regulators and (b) because any such statements were made

*after* the Zamias Guarantors closed on the Loans. (*Id.* at 17.) Fifth Third argues that the Zamias Guarantors' fraudulent inducement claim fails for the same reasons. (*Id.* at 18-19.)

### 2. Legal Standard

#### i. Fraud

"Federal law imposes heightened pleading standards for fraud." *Tracy Hua v. Wells Fargo Bank, N.A.*, No. CV 17-2365, 2017 WL 5624878, at \*6 (E.D. Pa. Nov. 22, 2017); *see Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 (3d Cir. 2015) (noting that when plaintiffs allege fraud their "pleadings must satisfy the 'stringent' Rule 9(b) requirements . . .") (internal citations omitted). Fraudulent inducement claims are also subject to Rule 9(b)'s heightened pleading standard. *See, e.g., Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co.*, 907 F. Supp. 2d 673, 677 (E.D. Pa. 2012).

"In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir. 2004)); *Tube City IMS Corp. v. Allianz Glob. Risks U.S. Ins. Co.*, No. 2:14CV1245, 2015 WL 150260, at \*6 (W.D. Pa. Jan. 12, 2015) (same); *Bentley v. Merck & Co.*, No. CV 17-1122, 2017 WL 2349708, at \*1 (E.D. Pa. May 30, 2017) (same). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200

21

(citing *Lum*, 361 F.3d at 224); *Dicio v. Wells Fargo Bank, N.A.*, No. CV 15-676, 2015 WL 8276585, at *11 (W.D. Pa. Nov. 4, 2015) (same).

"In common law and in Pennsylvania, the definition of fraud is well-settled." *In re Passarelli Family Tr.*, 2017 PA Super 366, 2017 WL 5495508, at *4 (Pa. Super. Ct. Nov. 16, 2017). To establish fraud, a Plaintiff "must demonstrate: '(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" *Id.* (quoting *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005); *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994) (same).

### ii.    Parol Evidence Rule[17]

"Under Pennsylvania law, '[o]nce a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.'" *Bral Corp. v. Johnstown Am. Corp.*, 919 F. Supp. 2d 599, 616 (W.D. Pa. 2013) (Gibson, J.) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436–

---

[17] The Court notes that, "[n]otwithstanding the name given it, the parol evidence rule is a rule, not of evidence, but of substantive law." *O'Brien v. O'Brien*, 66 A.2d 309, 311 (Pa. 1949); *see Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-39 (Pa. 2004) (applying the parol evidence rule to dismiss claims at the motion-to-dismiss/preliminary-objection phase and generally discussing the rule); *Alphonse Hotel Corp. v. Nam Tran*, No. 13 Civ. 7859 (DLC), 2014 WL 3801230, at *6 (S.D.N.Y. Aug. 1, 2014) (same). "Accordingly, the effect of [the parol evidence rule], and the right of a litigant to obtain judgment in reliance on it, may properly be determined on the pleadings, and judgment may be entered for want of a sufficient answer or reply which sets up an oral agreement invalidated by the rule." *O'Brien*, 66 A.2d at 72 (citing cases); *see Jenkins v. Jenkins*, No. 1025 WDA 2012, 2013 WL 11261852, at *4 (Pa. Super. Ct. Sept. 26, 2013); *In re Bono Holdings, Inc.*, Nos. 08-70259 BM, 08-70278 BM, 2009 WL 8556806, at *8 (Bankr. W.D. Pa. Sept. 22, 2009).

37 (Pa. 2004)). "An integration clause stating the parties intend the writing to represent their entire agreement is a 'clear sign' the writing 'expresses all of the parties' negotiations, conversations and agreements made prior to its execution.'" *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 589–90 (Pa. Super. Ct. 2013) (citing *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 204 (Pa. 2007)); *Marano v. Fulton Bank, N.A.*, No. 812 MDA 2016, 2017 WL 1242793, at *3 (Pa. Super. Ct. Apr. 4, 2017) (same).

"In cases where fraud is averred, whether parol evidence is admissible depends on the nature of the alleged fraud." *Boardakan Rest. LLC v. Gordon Grp. Holdings, LLC*, No. CIV.A. 11-5676, 2015 WL 4597970, at *4 (E.D. Pa. July 31, 2015) (citing *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 546 (Pa. Super. Ct. 2005)). "Pennsylvania recognizes two types of fraud claims . . . in relation to a contract: fraud in the inducement and fraud in the execution." *Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 969 (E.D. Pa. 2015); *see Axalta Coating Sys., LLC v. Midwest II, Inc.*, 217 F. Supp. 3d 813, 821 (E.D. Pa. 2016) (explaining difference between fraud in the inducement and fraud in the execution).

As this Court has previously held, "Pennsylvania law provides that '[w]hile parol evidence may be introduced based on a party's claim that there was a fraud in the execution of the contract, i.e., that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud-in-the-inducement of the contract, i.e., that an opposing party made false representations that induced the complaining party to agree to the contract.'" *Johnstown Am. Corp.*, 919 F. Supp. 2d at 617 (quoting *Yocca*, 854 A.2d at 43§, n. 26); *see Batoff*, 130 F. Supp. at 970-71 (holding that under Pennsylvania law "claims of fraud in the

23

inducement are subject to the parol evidence rule" while "Pennsylvania recognizes an exception

to the parol evidence rule for claims of fraud in the execution.")[18]

### 3. The Parol Evidence Rule Precludes the Court from Considering Mr. Peura's Extra-Contractual Statement that Fifth Third Would Not Pursue the Zamias Guarantors Individually

The parol evidence rule prevents the Court from considering Mr. Peura's October 10, 2013

statement that Fifth Third would not pursue the Zamias Guarantors individually. (*See* ECF No.

1-2 at ¶¶ 62-63; ECF No. 25 at 12; *id.* at 16; *id*, at 20-21.) The parol evidence rule applies here

because the contracts at issue embody the parties' "entire agreements" because all of the contracts

contain integration clauses.[19] *See Johnstown Am. Corp.*, 919 F. Supp. 2d at 616; *DeArmitt*, 73 A.3d at

589–90. Furthermore, courts applying Pennsylvania law cannot consider parol evidence when

ruling on fraudulent inducement claims. *See Johnstown Am. Corp.*, 919 F. Supp. 2d at 617 (Gibson,

J.) Therefore, the Court will not consider Mr. Peura's October 10, 2013 statement when ruling on

the Zamias Guarantors' fraudulent inducement claim (Count 5) or its "fraud" claim (Count 1), to

the extent that their "fraud" claim actually alleges fraudulent inducement.

The Court rejects the Zamias Guarantors' argument that the parol evidence rule does not

preclude the Court from considering Mr. Peura's statement at the motion to dismiss stage. The

---

[18] The Supreme Court of Pennsylvania explains that the justification for this rule is that "a party to a contract has the ability to protect himself from fraudulent inducements by insisting that those 'inducements' be made part of the written agreement, and refusing to contract if they are not." *Toy*, 928 A.2d at 206-07.

[19] *See* ECF No. 4, Exhibit H, ¶ 33 (Amendment to Forbearance Agreement on Taylor Loan, executed January 29, 2014); ECF No. 4, Exhibit K, ¶ 32 (Second Amendment to Forbearance Agreement on Pittston Loan, executed January 29, 2014); ECF No. 4, Exhibit L, ¶ 15(I) (The Taylor Deficiency Note, executed on December 22, 2015).

24

Zamias Guarantors cite *Fina v. Fina*, 737 A.2d 760 (Pa. Super. Ct. 1999) for the proposition that "[a]n agreement that prohibits non-written modification may be modified by *subsequent* oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing." (ECF No. 25 at 22) (quoting *Fina*, 737 A.2d at 764) (emphasis added). The Zamias Guarantors' argument misses the mark for two reasons. First, there is no evidence that the parties ever intended to modify the prior written contracts. Second, the Zamias Guarantors confuse the relevant issue; the question is not whether Mr. Peura's extra-contractual statement modified the *original* loan agreements; it is whether Fifth Third, acting through Mr. Peura, fraudulently *induced* the Zamias Guarantors to execute *additional guaranties* beginning with the January 29, 2014 forbearance agreements. (*See* ECF No. 25 at 16, 20.) Therefore, the Zamias Guarantors' arguments for why the parol evidence rule does not apply here are without merit.

### 4.   The Zamias Guarantors Have Failed to Plead Fraud with Sufficient Particularity to Survive Fifth Third's Motion to Dismiss

The Zamias Guarantors have failed to plead fraud with sufficient particularity to satisfy the "stringent" requirements of Fed. R. Civ. P. 9(b). The Zamias Guarantors' central contention in their "fraud" claim is that Fifth Third "made intentionally false representations regarding the collateral for the loans and grossly misstated the value of the collateral."[20] (ECF No. 25 at 16.) More precisely, the Zamias Guarantors allege that Fifth Third: (1) maneuvered to "keep the Zamias Guarantors on the hook long enough for George and Marianna Zamias to die and thereby

---

[20] The Zamias Guarantors also contend that Fifth Third "made intentional misrepresentations regarding its intent to pursue personal guaranties signed by the Plaintiffs." (ECF No. 25 at 16.) However, as discussed above, this evidence is barred by the parol evidence rule. The Court cannot consider Mr. Puera's alleged statement because the contracts contained integration clauses and thus embodied the parties' entire agreements.

collect on the [life i]nsurance [p]olicy" (ECF No. 1-2 at ¶ 31); (2) engaged in a "scheme" and artificially inflated the value of the collateral put up by the Zamias Guarantors to "bridge the collateral gap" (*id.* at ¶¶ 34-35) and make the Loans "appear as 'conforming loans' to Federal regulators" to extend the life of the Loans (*id.* at ¶ 31); (3) required the Zamias Guarantors to pledge properties as collateral despite the fact that Fifth Third knew that the properties had no market value "to make the Loans appear collateralized to federal regulators" (*id.* at ¶ 42); and (4) "misrepresent[ed] its true intentions to the Zamias Guarantors and strong arm[ed] them into making unlawful pledges of assets already pledged as collateral to other lenders." (*Id.* at ¶ 36.)

The Zamias Guarantors failed to allege when and where Fifth Third made these misrepresentations and "inject the requisite precision" into their fraud allegations. *Frederico*, 507 F.3d at 200.[21] These vague, generic, and amorphous allegations fall far short of the "stringent" requirement that "a plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* at 200. Therefore, the Court holds that the Zamias Guarantors failed to plead fraud with sufficient particularity to satisfy the "stringent" pleading requirements of Fed. R. Civ. P. 9(b). Accordingly, the Court will dismiss the Zamias Guarantors' fraud claim (Count 1).

## 5. The Zamias Guarantors Have Failed to Plead Fraudulent Inducement with Sufficient Particularity to Survive Fifth Third's Motion to Dismiss

The Zamias Guarantors' fraudulent inducement claim centers around their allegation that they would not have signed any of the contracts and loan documents executed after October 10,

---

[21] The Court also notes that most of these representations appear to have been made to federal regulators, rather than the Zamias Guarantors themselves.

26

2013 had they not relied on Mr. Peura's fraudulent assurance that Fifth Third would not pursue the Zamias Guarantors personally. (*See* ECF No. 1-2 at 22-23.) But, as discussed above, Mr. Peura's statement is barred by the parol evidence rule. Absent Mr. Puera's statement, the Zamias Guarantors have failed to plead sufficient facts to give rise to a reasonable inference that Fifth Third is liable for fraudulent inducement under the "stringent" pleading requirements for fraudulent inducement. Fed. R. Civ. P. 9(b). Accordingly, this Court will dismiss the Zamias Guarantors' fraudulent inducement claim (Count 5).

## D. The Zamias Guarantors Have Sufficiently Pleaded Their Interference with Contractual Relations Claim to Survive Fifth Third's Motion to Dismiss

The Zamias Guarantors assert that Fifth Third interfered with the Zamias Guarantors' contractual relationships in three distinct ways. First, by its "failure to properly and timely fund Plaintiffs' [Taylor and Pittston] Projects" (ECF No. 1-2 at ¶ 91) which "harm[ed] Plaintiffs' contractual relationship[s] with their contractors" (*id.*) and caused the Zamias Guarantors to suffer economic damages "in the form of numerous mechanics' liens and lost profits." (*Id.* at ¶ 93.) Second, by its "strong arm efforts to bridge the valuation gap in its collateral [causing] Plaintiffs to pledge entities and real property already mortgaged or pledged to other banks." (*Id.* at ¶ 94.) Third, by "each instance when Fifth Third threatened the viability of numerous sales and/or refinancing transactions involving the Plaintiffs' properties." (*Id.* at ¶ 96.)

In response, Fifth Third contends that the Zamias Guarantors' tortious interference claim is barred by the statute of limitations because the Zamias Guarantors brought the claim more than two years after it accrued. (ECF No. 4 at 19.) Fifth Third further contends that the Zamias Guarantors lack standing to assert a tortious interference claim based on Fifth Third's failure to

fund the Taylor and Pittston Projects because the Zamias Guarantors did not borrow the loans themselves but instead guaranteed loans borrowed by Taylor Associates and Pittston Associates.[22] (*Id.* at 20-21.)

"Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (quoting *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998)). The fifth criterion does not apply in this case because the Zamias Guarantors allege that Fifth Third interfered with existing, not prospective, contracts.

"Pennsylvania courts apply the two-year statute of limitations of 42 Pa. C.S.A. § 5524(3) to tortious interference with contractual relations claims." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) (citing *Bednar v. Marino*, 646 A.2d 573, 577 (Pa. Super. Ct. 1994)). "A cause of action for tortious interference with contract accrues upon

---

[22] Fifth Third does not assert that the Zamias Guarantors lack standing to bring tortious interference claims based on the other two types of interferences the Zamias Guarantors allege, namely Fifth Third's alleged "strong arm efforts to bridge the valuation gap" and "each instance when Fifth Third threatened the viability of numerous sales and/or refinancing transactions involving Plaintiffs' properties."

discovery of the allegedly interfering acts or when the allegedly interfering acts should have been discovered with reasonable diligence." *Hyldahl v. Denlinger*, No. CV 14-3918, 2014 WL 12606157, at *1 (E.D. Pa. Dec. 15, 2014) (quoting *Colonial Assur. Co. v. Mercantile & Gen. Reinsurance Co.*, 297 F. Supp. 2d 764, 770 (E.D. Pa. 2003). As this Court previously held, "the point at which a party should reasonably be aware of the injury and its cause is an issue of fact to be determined by the jury." *Johnstown Am. Corp.*, 919 F. Supp. 2d at 611 (Gibson, J.) (internal citations omitted). But this Court also stated that "'where the facts are so clear that reasonable minds cannot differ,' the court may determine the point at which a party should reasonably be aware as a matter of law." *Id.* (Gibson, J.) (quoting *Caleb v. CRST, Inc.*, 43 Fed. App'x 513, 516 (3d Cir. 2002)).

The Zamias Guarantors filed this action on June 26, 2017. Accordingly, 42 Pa. C.S.A bars any tortious interference claims that accrued prior to June 26, 2015. § 5524(3).

The Court agrees with Fifth Third that § 5524(3) bars the Zamias Guarantors' claim that Fifth Third tortiously interfered by failing to adequately fund the Projects. The Zamias Guarantors allege that Fifth Third stopped funding the Projects in 2008 (ECF No. 25 at 4), and assert that "[b]y late 2011," the Taylor and Pittston Projects "each had large mechanics' liens placed on them by the general contractors due to Fifth Third's failure to fund, and both had still not been fully leased due to Fifth Third's reduction of the loans." (*Id.* at 5.) The Zamias Guarantors were, or should have been aware of, these "allegedly interfering acts" by 2011 when contractors filed mechanics liens against the Projects. Thus, the Court finds that reasonable minds cannot differ that the Zamias Guarantors should have been aware of these allegedly tortious interferences long before June 26, 2015. Therefore, as a matter of law, § 5524(3) bars the Zamias

Guarantors' allegation that Fifth Third tortiously interfered with its contractual relations by its "failure to properly and timely fund [the Taylor and Pittston] Projects."[23] (ECF No. 25 at 17.)

The Court also agrees with Fifth Third that § 5524(3) bars the Zamias Guarantors' claim that Fifth Third tortiously interfered by using "strong arm efforts to bridge the valuation gap in its collateral [and] . . . forc[ing] the Plaintiffs to pledge entities and real property already mortgaged or pledged to other banks." (*Id.*) The Zamias Guarantors assert that Fifth Third forced them to pledge these properties and assets on March 28, 2012. (*Id.* at 6-9.) Thus, the Court finds that reasonable minds cannot differ in concluding that the Zamias Guarantors should have been aware of these allegedly tortious interferences prior to June 26, 2015. Therefore, as a matter of law, § 5524(3) bars the Zamias Guarantors' claim that Fifth Third tortiously interfered by using "strong arm efforts to bridge the valuation gap in its collateral [and] . . . forc[ing] the Plaintiffs to pledge entities and real property already mortgaged or pledged to other banks." (*Id.* at 17.)

The Court holds that § 5524(3) does not bar the Zamias Guarantors' final allegation of tortious interference, i.e. that Fifth Third tortiously interfered in "each instance when Fifth Third threatened the viability of numerous sales and/or refinancing transactions involving the Plaintiffs' properties." (*Id.* at ¶ 96.) The last two of these sales and refinancing transactions occurred in December 2015.[24] (*See* ECF No. 1-2 at ¶¶ 64-67.) Thus, the two-year statute of limitations had not expired when the Zamias Guarantors brought the instant action on June 26,

---

[23] Since the Court holds that the statute of limitations precludes the Zamias Guarantors' from succeeding on their tortious interference claim regarding Fifth Third's failure to adequately fund the Projects, the Court need not address Fifth Third's argument that the Zamias Guarantors lack standing.

[24] The Zamias Guarantors assert that "[t]he Pittston Project was sold for $4,250,000 to T Pittston Crossings PA LLC on December 29, 2015" (ECF No. 1-2 at ¶ 66), and that the "Taylor Project was deeded back to Fifth Third through the bankruptcy process on December 24, 2015." (*Id.* at ¶ 67.)

2017. Accordingly, § 5524(3) does not preclude the Zamias Guarantors' tortious interference claims arising from Fifth Third's involvement in the transactions that took place in December 2015.

In conclusion, the Court will grant in part, and deny in part, Fifth Third's Motion to Dismiss the Zamias Guarantors' tortious interference claims. The Court grants Fifth Third's Motion to Dismiss the Zamias Guarantors' first two allegations of tortious interference claims, which, as a matter of law, accrued before June 26, 2015 and are thus barred by § 5524(3)'s two-year statute of limitations. The Court denies Fifth Third's Motion to Dismiss the Zamias Guarantors' final allegations of tortious interference because the Zamias Guarantors filed suit less than two years after the allegedly tortious conduct occurred.

E.     The Zamias Guarantors Have Failed to Adequately Plead a Cause of Action for the Breach of the Implied Covenant of Good Faith and Fair Dealing to Survive Fifth Third's Motion to Dismiss

Fifth Third argues that this Court must dismiss the Zamias Guarantors' claim for breach of the implied covenant of good faith and fair dealing because (1) the Zamias Guarantors have not brought a breach of contract claim and (2) Pennsylvania law does not recognize a standalone claim for breach of the implied covenant of good faith and fair dealing. (ECF No. 4 at 21-22.) The Zamias Guarantors do not directly respond to Fifth Third's argument. Instead, in their brief, the Zamias Guarantors reiterate the purported bases for their claim (*see* ECF No. 25 at 18-19, ¶¶ 1-4) and assert that the duty of good faith and fair dealing applies here because it attaches to all contracts in Pennsylvania. (*Id.* at 18-19.)

"Pennsylvania law does not . . . recognize an independent claim for breach of the implied covenant of good faith and fair dealing." *Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*, No. CIV.A.

05-102, 2006 WL 146426, at *6 (E.D. Pa. Jan. 12, 2006). "In Pennsylvania, the implied duty of good faith is 'tied specifically to and is not separate from the duties a contract imposes on the parties.'" *Rapid Circuits, Inc. v. Sun Nat. Bank*, No. CIV.A. 10-6401, 2011 WL 1666919, at *17 (E.D. Pa. May 3, 2011) (quoting *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 434 (Pa. 2001)). Accordingly, courts applying Pennsylvania law dismiss claims for breach of the implied covenant of good faith and fair dealing when the plaintiff has not pleaded a breach of contract claim. *See Temple Univ. Hosp., Inc.*, 2006 WL 146426, at *6 (dismissing breach of implied covenant of good faith and fair dealing claim because the complaint "does not include the technical breach of contract basis that is required in order to pursue a claim based on the breach of an implied covenant of good faith and fair dealing."); *Rapid Circuits, Inc.*, 2011 WL 1666919, at *18 (dismissing claim for breach of the implied covenant of good faith and fair dealing because plaintiff failed to plead a breach of contract claim and thus "fails to state a claim for breach of the implied covenant of good faith and fair dealing.")

The Zamias Guarantors did not plead a breach of contract claim. (*See* ECF No. 1-2.) As stated above, Pennsylvania law does not recognize a standalone claim for breach of the implied covenant of good faith and fair dealing. Thus, the Zamias Guarantors cannot maintain their independent claim for breach of the implied covenant of good faith and fair dealing. Therefore, the Court will dismiss this claim.[25]

F.    **The Zamias Guarantors Have Failed to Sufficiently Plead Their Accounting Claim to Survive Fifth Third's Motion to Dismiss**

---

[25] As stated below, the Zamias Guarantors will be granted leave to amend this claim and will be permitted to assert a separate breach of contract claim if they so choose.

The Zamias Guarantors allege that Fifth Third "disposed of certain collateral in the Taylor Associates' and Pittston Associates' bankruptcy cases" but 'failed to account to the [Zamias Guarantors] for its disposition of such collateral." (ECF No. 1-2 at ¶¶ 103-104.) The Zamias Guarantors further allege that Fifth Third "failed to account to the [Zamias Guarantors] and properly credit [them] with all payments that they have made on their account." (*Id.* at ¶ 108.) The Zamias Guarantors assert that Fifth Third's failure to account for these proceeds constitutes a breach of contract and a breach of the duty of good faith and fair dealing. (*Id.* at 107.) The Zamias Guarantors contend that they are "entitled to an accounting of all proceeds received by Fifth Third concerning the transactions involved in this action." (*Id.* at 109.)

Fifth Third contends that this Court must dismiss the Zamias Guarantors' accounting claim because "there is no fiduciary relationship between the parties, there are no valid allegations of fraud . . . the accounts are not complicated . . . [and] Plaintiffs' readily admit that they would have an adequate remedy at law for this claim . . . ."[26] (ECF No. 4 at 24.) In response, the Zamias Guarantors repeat their assertion that they are entitled to an accounting of the collateral that Fifth Third disposed of in the transactions mentioned in the Complaint. (ECF No. 25 at 19-20.)

"Under Pennsylvania law, the entitlement to an accounting may be legal or equitable." *Lightman v. Marcus*, No. CIV.A. 12-97, 2012 WL 1344378, at *3 (E.D. Pa. Apr. 18, 2012). The Court notes that the Zamias Guarantors failed to specify which type of accounting claim they assert. Accordingly, the Court construes the Zamias Guarantors' generic "accounting" claim as two

---

[26] Fifth Third assumes that Fifth Third brought an equitable accounting claim. Fifth Third does not address whether the Court should dismiss a legal accounting claim.

separate claims — a claim a legal accounting and a claim for an equitable accounting. As explained below, the Court will dismiss both claims.

### 1. The Zamias Guarantors Have Failed to Sufficiently Plead Their Legal Accounting Claim to Survive Fifth Third's Motion to Dismiss

"A legal accounting is not a claim, but a demand for relief." *Canfield v. Statoil USA Onshore Properties Inc.*, No. CV 3:16-0085, 2017 WL 1078184, at *25 (M.D. Pa. Mar. 22, 2017) (citing Pa. R. Civ. P. 1021(a)). "A legal accounting 'is merely an incident to a proper assumpsit claim.'" *Sullivan v. Rankin*, No. 1:16-CV-2546, 2017 WL 4544619, at *6 (M.D. Pa. Sept. 29, 2017) (quoting *Buczek v. First National Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. Super. Ct. 1987)). An assumpsit claim is a "common-law action for breach of such a promise or for breach of a contract." *Sullivan*, 2017 WL 4544619, at *6 (internal citations and quotation marks omitted). Accordingly, "the right to an accounting at law is a form of relief that attaches only where the defendant has breached a valid contract with the plaintiff." *Lightman*, 2012 WL 1344378, at *4 (citing *Haft v. U.S. Steel Corp.*, 499 A.2d 676, 677–78 (Pa. Super. Ct. 1985)). "Thus, a legal accounting requires a valid contract, either express or implied, and a breach of that contract." *Canfield*, 2017 WL 1078184, at *25 (internal citations omitted).

The Court holds that the Zamias Guarantors have failed to sufficiently plead their claim for legal accounting. The Zamias Guarantors have not brought a separate claim for breach of contract. The Court notes that in Count 4 of their Complaint (labeled the "Accounting" claim), the Zamias Guarantors assert that "Fifth Third's [failure to meet its] obligation to account to the Plaintiffs for its disposition of the collateral constitutes a breach of contract . . . ." (ECF No. 1-2 at ¶ 107.) However, as noted above, a legal accounting is not a separate claim but rather a form of

relief that accompanies a formal breach of contract claim. Because the Zamias Guarantors have not brought a breach of contract claim, the Court will dismiss the Zamias Guarantors' claim for legal accounting.

### 2. The Zamias Guarantors Have Failed to Sufficiently Plead Their Equitable Accounting Claim to Survive Fifth Third's Motion to Dismiss

"An equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, or plaintiff possesses an adequate remedy at law." *Kappe Assocs., Inc. v. Chesapeake Envtl. Equip., LLC*, No. 5:15-CV-02211-JFL, 2016 WL 1257665, at *12 (E.D. Pa. Mar. 31, 2016) (quoting *Rock v. Pyle*, 720 A.2d 137, 142 (Pa. Super. Ct. 1998)) (emphasis in original). "Equitable jurisdiction for an accounting does not exist merely because the plaintiff desires information that [it] could obtain through discovery." *Kappe Assocs., Inc*, 2016 WL 1257665, at *12 (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1124 (Pa. Super. Ct. 1987)); *McWreath v. Range Res.--Appalachia, LLC*, 81 F. Supp. 3d 448, 468 (W.D. Pa. 2015) (Conti, J.) (same).

Even when the veracity of all of the allegations of the Complaint is assumed, the Zamias Guarantors' have not pleaded sufficient facts to give rise to a reasonable inference that they are entitled to relief pursuant to their equitable accounting claim. The Zamias Guarantors have not alleged that they had a fiduciary relationship with Fifth Third. Furthermore, this case does not involve circumstances that typically give rise to a fiduciary relationship, such as "a special vulnerability in one person that creates a unique opportunity for another person to take advantage to their benefit." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 821 (Pa. 2017); *see also Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 293 (W.D. Pa. 2014) ("A fiduciary relationship

35

exists where 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other.'") (quoting *Johnson v. Robinson (In re Johnson)*, 292 B.R. 821, 828 (Bankr. E.D. Pa. 2003). Therefore, the Court will grant Fifth Third's Motion to Dismiss the Zamias Guarantors' equitable accounting claim.

### G. The Zamias Guarantors Have Failed to Sufficiently Plead Their Predatory Lending Claim to Survive Fifth Third's Motion to Dismiss

Fifth Third contends that the Zamias Guarantors' predatory lending claim fails because there is no common law claim for predatory lending in Pennsylvania. (ECF No. 4 at 24-25.) Alternatively, Fifth Third contends that the Zamias Guarantors cannot maintain a predatory lending claim because they "were not consumers, did not borrow from Fifth Third, and were not members of a protected class" but rather "sophisticated developers represented by counsel." (*Id.* at 25.)

In response, the Zamias Guarantors argue that Pennsylvania does recognize a claim for predatory lending. (ECF No. 25 at 22.) The Zamias Guarantors further assert that Fifth Third engaged in predatory lending practices by: (1) "refus[ing] to fund the full amount of construction loans as committed . . ."; (2) "plac[ing] the loans into 'workout' even though the Zamias Guarantors were not in default . . ."; (3) "continually demand[ing] that the Zamias Guarantors provide additional collateral even though it had no entitlement to the same"; (4) and "permit[ing]

the Non-Zamias Guarantors to buy out their guaranties, but . . . not afford[ing] the same opportunity to the Zamias Guarantors." (*Id.* at 23.)

"[T]here is no common law claim for predatory lending in Pennsylvania, and any claim alleging predatory lending without citation to a statutory basis for the claim should be dismissed." *Welch v. Bank of Am.*, No. 13CV1058, 2014 WL 550595, at *6 (W.D. Pa. Feb. 11, 2014); *see Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 708 (E.D. Pa. 2016) ("Pennsylvania does not recognize a common law action for predatory lending"); *In re McConnell*, 390 B.R. 170, 182 (Bankr. W.D. Pa. 2008) ("there is no common law cause of action for 'predatory lending.' Any claim for relief for predatory lending practices must be supported by some statutory basis.").

The Zamias Guarantors do not cite any statute to support their predatory lending claim, either in their Complaint (*see* ECF No. 1-2 at ¶¶ 116-118) or in their Brief in Opposition to Fifth Third's Motion to Dismiss.[27] (*See* ECF No. 25 at 22-23.) Therefore, the Court will grant Fifth Third's Motion to Dismiss the Zamias Guarantors' predatory lending claim.

### H.    Leave to Amend

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."[28] *CollegeSource*,

---

[27] The Court notes that the cases that the Zamias Guarantors cite to support their predatory lending claim are inapposite; unlike the Zamias Guarantors, the plaintiffs in those cases identified statutory bases for their predatory lending claims. *See McGlawn v. Pennsylvania Human Relations Comm'n*, 891 A.2d 757 (Pa. Commw. Ct. 2006) (citing the Fair Housing Act); *Girard Fin. Co. v. Pennsylvania Human Relations Comm'n*, 52 A.3d 523 (Pa. Commw. Ct. 2012) (citing the Fair Housing Act); *Salley v. Option One Mortg. Corp.*, 925 A.2d 115 (2007) (citing the Truth in Lending Act). In contrast, the Zamias Guarantors have not pointed to a statutory basis for their predatory lending claim.
[28] Likewise, Federal Rule of Civil Procedure 15 embodies a liberal approach to amendment and directs that "leave shall be freely given when justice so requires" unless other factors weigh against such relief. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990).

*Inc. v. AcademyOne, Inc.,* 597 F. App'x 116, 126 (3d Cir. 2015) (quoting *Phillips v. County of Allegheny,*
515 F.3d 224, 245 (3d Cir. 2008)). Amendment would be futile "if the amended complaint would
not survive a motion to dismiss for failure to state a claim upon which relief could be granted."
*Munchak v. Ruckno,* 692 F. App'x 100, 102 (3d Cir. 2017) (internal citations omitted).

For the reasons stated above, the Court finds that amendment would be futile with respect
to the Zamias Guarantors' fraud, fraudulent inducement, equitable accounting, and predatory
lending claims, which this Court has dismissed in their entirety. The Court also finds that
amendment would be futile with respect to the Zamias Guarantors' first two allegations of
tortious interference with contractual relations because they are, as a matter of law, barred by the
two-year statute of limitations. Accordingly, the Court will dismiss these claims without leave to
amend.

By contrast, the Court finds that amendment would not be futile with respect to the
Zamias Guarantors' claims of (1) breach of the implied covenant of good faith and fair dealing
and (2) legal accounting. The Court reiterates that these claims must be accompanied by a formal
breach of contract claim. The Court also observes that the Zamias Guarantors have alleged breach
of contract within other counts of their Complaint, but have failed to technically assert a separate
breach of contract claim. The Court therefore will allow the Zamias Guarantors to amend their
Complaint to add a claim for breach of contract, if they choose to do so.

**VII.   Conclusion**

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART**, Fifth
Third's Motion to Dismiss (ECF No. 4).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE ZAMIAS, ESTATE OF MARIANNA ZAMIAS, individually and as co-executor of the Estate of Marianna Zamias, STEPHEN ZAMIAS, individually and as co-executor of the Estate of Marianna Zamias, ESTATE OF SAMUEL ZAMIAS, DECEASED, Kathleen Zamias, Executor, | ) ) ) ) ) ) ) ) ) | Case No. 3:17-cv-153 |
| Plaintiffs, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| FIFTH THIRD BANK, | ) ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 9th day of January, 2018, upon consideration of the Zamias Guarantors'

Motion to Remand (ECF No. 7) and Fifth Third's Motion to Dismiss (ECF No. 4), and in

accordance with the attached memorandum opinion, **IT IS HEREBY ORDERED** as follows:

1. The Zamias Guarantors' Motion to Remand (ECF No. 7) is **DENIED.**

2. Fifth Third's Motion to Dismiss (ECF No. 4) is **GRANTED IN PART** and **DENIED IN
   PART** as follows:

   a. Fifth Third's Motion to Dismiss is **GRANTED** with respect to the following
      claims asserted by the Zamias Guarantors, which are **DISMISSED WITH
      PREJUDICE:**

      i. Fraud (Count 1);

      ii. Fraudulent inducement (Count 5);

  iii. Tortious interference with contractual relations (Count 2), with respect

    to the first two allegations which are, as a matter of law, barred by the

    two-year statute of limitations;

  iv. Equitable accounting (Count 4);[29] and

  v. Predatory Lending (Count 6).

b. Fifth Third's Motion to Dismiss is also **GRANTED** with respect to the Zamias

  Guarantors' claim for breach of the covenant of good faith and fair dealing

  (Count 3) and their claim for legal accounting (Count 4). As explained above,

  these claims are **DISMISSED WITH LEAVE TO AMEND**.

c. Fifth Third's Motion to Dismiss is **DENIED** with respect to the Zamias

  Guarantors' third allegation of tortious interference with contractual relations

  (Count 2).


       **BY THE COURT:**

       **KIM R. GIBSON**
       **UNITED STATES DISTRICT JUDGE**

---

[29] The Court notes that the Zamias Guarantors did not plead separate counts for legal and equitable accounting. However, as noted above, the Court construes Count 4 (titled "Accounting") as two separate counts—one for legal accounting and one for equitable accounting.