IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE ZAMIAS, ESTATE OF MARIANNA ZAMIAS, DECEASED, DAMIAN ZAMIAS, individually and as co-executor of the Estate of Marianna Zamias, STEPHEN ZAMIAS, individually and as co-executor of the Estate of Marianna Zamias, ESTATE OF SAMUEL ZAMIAS, DECEASED, Kathleen Zamias, Executor,<br><br>Plaintiffs,<br><br>v.<br><br>FIFTH THIRD BANK,<br><br>Defendant. | Case No. 3:17-cv-153<br><br><br><br><br><br>JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is Fifth Third Bank's Motion for Judgment on the Pleadings (ECF No. 36). The Motion is fully briefed (*see* ECF Nos. 37, 41) and is ripe for disposition. For the reasons that follow, the Court will **GRANT** Fifth Third's Motion in full.

### II. Background[1]

#### A. Factual History[2]

---

[1] The Court previously determined that diversity jurisdiction exists for the present matter and that venue is proper before this Court. *See Zamias v. Fifth Third Bank*, No. 3:17-CV-153, 2018 WL 355462, at *1 (W.D. Pa. Jan. 9, 2018) (Gibson, J.).

[2] The facts contained in this section are derived from Plaintiffs' Amended Complaint (ECF No. 28). The Court accepts these facts as true for the sole purpose of deciding the pending Motion. The Court notes that the fact section here is substantially similar to that contained in the Court's previous Memorandum Opinion disposing of Plaintiffs' Motion to Remand and Fifth Third's Motion to Dismiss (*see* ECF No. 26) because the first 79 paragraphs of the Original Complaint (ECF No. 1-2) and the Amended Complaint (ECF No. 28) are identical. In fact, the only difference between the two complaints is found in the causes of action

This dispute arises from real estate loans made on the eve of the Financial Crisis to facilitate the construction of shopping malls in Eastern Pennsylvania. (*See generally* ECF No. 28 at ¶¶ 8-18.)

### 1. Fifth Third Extends Loans, which Plaintiffs Guarantee

In 2007, Fifth Third executed a $20,000,000.00 construction loan with Taylor Associates (the "Taylor Loan") to finance the construction of a mall in Taylor Borough, Lackawanna County. (*Id.* at ¶¶ 9, 12, 13.) George Zamias, Marianna Zamias, Damian Zamias, Samuel Zamias, and Stephen Zamias (the "Zamias Guarantors" or "Plaintiffs") executed a Continuing Guaranty and Suretyship Agreement for the full amount of the Taylor Loan. (*Id.* at ¶ 14.)

In 2008, Fifth Third executed an $11,400,000.00 construction loan with Pittston Associates (the "Pittston Loan") to finance the construction of a mall in Pittston Township, Luzerne County. (*Id.* at ¶¶ 10, 16.) The Zamias Guarantors executed a Continuing Guaranty and Suretyship Agreement for the full amount of the Pittston Loan. (*Id.* at ¶ 17.)

Fifth Third extended these loans despite knowing that they were not adequately collateralized. (*Id.* at ¶ 18.) Furthermore, at all relevant times, Fifth Third knew that Damian, Stephen, and Samuel Zamias were beneficiaries of a life insurance policy that would provide them with "substantial death benefit payment[s] upon the death of both George and Marianna Zamias." (*Id.* at ¶ 19.)

The Financial Crisis hit the Taylor and Pittston projects (together "the Projects") hard. (*Id.* at ¶ 21.) Multiple tenants terminated their commitments. (*Id.*) Around the same time, "Fifth Third

---

section. The Court notes, however, that this fact section is shorter, as the Court has removed factual allegations rendered superfluous by the Court's prior dismissal of several of Plaintiffs' claims.

2

ceased funding the Projects." (*Id.* at ¶ 22.) As a result, the Projects failed to pay their bills on time, causing creditors to file merchants' liens. (*Id.*) Construction on the Projects was also delayed. (*Id.*)

### 2. The Parties Modify the Loan Agreements and Plaintiffs Execute New Guaranties

Neither of the Projects had been completed by the time that the Taylor and Pittston Loans (together "the Loans") matured. (*Id.* at ¶¶ 24-26.) After the Loans matured, Fifth Third and the Zamias Guarantors modified the Loans and executed new guaranties. (*Id.*)

The Taylor Loan matured on June 1, 2009. (*Id.* at ¶ 24.) The parties amended the Taylor Loan on September 29, 2009 by executing the "Taylor First Loan Modification," which amended the promissory note (now the "Restated Note") and reduced the loan balance to $17,245,500.00. (*Id.* at ¶ 24.) The parties modified the Taylor Loan a second time on December 28, 2011, extending the maturity date to January 5, 2012. (*Id.* at ¶ 27.) The Zamias Guarantors executed new guaranties for these amendments to the Taylor Loan. (*Id.* at ¶¶ 24-26.)

The Pittston Loan matured on July 1, 2010. (Id. at ¶ 26.) The parties amended the Pittston Loan on September 10, 2010 by executing the "Pittston Forbearance Agreement," which reduced the principal to $9,925,000.00 and extended the expiration date to July 5, 2012. (*Id.* at ¶¶ 26.) The Zamias Guarantors executed new guaranties for the Pittston Forbearance Agreement. (*Id.* at ¶¶ 24-26.)

By late 2011, the Projects were worth "substantially less" than the value of the Loans. (*Id.* at ¶ 29.) But Fifth Third refused to allow the Zamias Guarantors to buy out their guarantees

3

because Fifth Third believed that it could collect in full once George and Marianna Zamias died and their heirs collected their substantial life insurance benefits.[3] (*Id.*)

To achieve its scheme to collect the life insurance benefits owed to Damian, Stephen, and Samuel Zamias, Fifth Third needed to keep the Taylor and Pittston Loans "on the books" until George and/or Marianna Zamias died. This required that Fifth Third "bridge the valuation gap" on the Projects; Fifth Third needed to make it appear that "the Loans were sufficiently collateralized" to comply with federal regulations. (*Id.* at ¶¶ 33-35.) Fifth Third accomplished this by entering into forbearance agreements on both Loans with the Zamias Guarantors in March of 2012. (*Id.* at ¶¶ 36-40.)

To bridge the valuation gap on the Taylor Loan, Fifth Third executed a "Forbearance Agreement" and a "Second Modification of the Loan Agreement." (*Id.* at ¶ 37.) Through these modifications, Fifth Third: (1) further reduced the balance by $5,000,000.00 to $12,245,000.00, (2) required Taylor Associates and Pittston Associates to execute a new note (the "Term Note") for $5,000,000.00 (effectively nullifying the $5,000,000.00 reduction in the overall balance), (3) required the Zamias Guarantors to guarantee the new Term Note, and (4) "required the Zamias Guarantors to execute pledges and collateral assignments of the partnership interests of numerous other projects . . . in which they had interests."[4] (*Id.* at ¶ 37.) The reorganization of the Taylor Loan was accomplished on March 28, 2012 when the parties executed a "Forbearance Agreement" and a "Second Modification of the Loan Agreement." (*Id.* at ¶ 38.)

---

[3] As noted above, the Zamias Guarantors had guaranteed the loans from Fifth Third to Taylor Associates and Pittston Associates.

[4] These projects included: Beckley Plaza in West Virginia; Bel Air Plaza in Johnstown, Pennsylvania; Westwood Plaza in Johnstown, Pennsylvania; White Oaks Plaza in Johnstown, Pennsylvania; Grove City Plaza in Grove City, Pennsylvania; and University Park Plaza in Johnstown, Pennsylvania. (*Id.* at ¶ 37.)

4

To bridge the valuation gap on the Pittston Loan, which was already in forbearance, Fifth Third "demanded" that the Zamias Guarantors "pledge and assign [to Fifth Third] their partnership interest in two projects"[5] and mortgage Fifth Third land "that was already mortgaged to another bank." (*Id.* at ¶ 36.) In other words, Fifth Third "strong arm[ed]" the Zamias Guarantors into pledging assets that were "already pledged as collateral to other lenders." (*Id.*) The reorganization of the Pittston Loan was accomplished on March 28, 2012, when the parties executed the "First Amendment to Forbearance Agreement." (*Id.*)

Unsurprisingly, Fifth Third required the Zamias Guarantors to execute Amended Guaranties for the repackaged Taylor and Pittston Loans. (*Id.* at ¶ 39.)

Fifth Third also fixed a "release price" to each of the "pledged" properties. (*Id.* ¶ 43.) The release prices "bore no rational relation to any sort of industry accepted form of valuation but were instead manufactured . . . by Fifth Third . . . in order to make the [p]ledges appear to have value to federal regulators and thereby justify the Term Note that should have been written down altogether." (*Id.* at ¶ 45.) While several of the "pledged" properties have been foreclosed or refinanced, only two of them sold at their "release prices,"[6] indicating that the "release prices" bore no relation to the actual value of the pledged properties. (*Id.* at ¶¶ 45, 50.) Fifth Third coerced the Zamias Guarantors into pledging these properties by threatening to confess judgment, despite knowing that assigning these pledges violated the loan agreements for each of the pledged properties. (*Id.* at ¶ 52.)

---

[5] East Hills Plaza in Johnstown, Pennsylvania, and HT Commons in Tamaqua, Pennsylvania. (*Id.* at ¶ 35.)
[6] The Zamias Guarantors paid Fifth Third the complete "release price" on both the Grove City and the University Park properties. (*Id.* at ¶ 60.)

5

In January 2014, Fifth Third required Taylor Associates, Pittston Associates, the Zamias Guarantors, and Samuel Zamias's widow[7] to execute amended forbearance documents on both Loans. (*Id.* at ¶ 59.) For the Taylor Loan, the parties executed an "Amendment to the Forbearance Agreement," an "Amended and Restated Promissory Note," and "Second Amended and Restated Guaranties for both the Term Note and [the] Restated Note" on January 29, 2014. (*Id.* at ¶ 61.) The same day, the parties executed a "Second Amendment to the Forbearance Agreement" on the Pittston Loan. (*Id.* at ¶ 60.)

### 3. The Borrowers File for Bankruptcy

On May 20, 2015, Taylor Associates and Pittston Associates filed for bankruptcy and sold the Projects at Fifth Third's direction. (*Id.* at ¶ 81.) The Pittston Project sold for $4,250,000.00. (*Id.* at ¶ 66.) The Taylor Project was deeded back to Fifth Third after Fifth Third submitted the highest offer in the form of a $6,100,000 "credit bid." (*Id.* at ¶ 88.) But Fifth Third failed to credit Taylor Associates, Pittston Associates, and/or the Zamias Guarantors with any value for the Taylor Project and never disclosed its appraisal value. (*Id.*) Fifth Third's refusal to credit Taylor Associates and the Zamias Guarantors either the fair market value or the sales price of the Taylor Project violated the terms of the Order Confirming the Sale of Property, entered by Bankruptcy Judge Deller as part of the bankruptcy proceedings. (ECF No. 28 at 16.)

### B. Procedural History

On June 26, 2017, Plaintiffs filed this action in the Court of Common Pleas of Cambria County, Pennsylvania. (See ECF No. 1-2.) Plaintiffs asserted six counts against Fifth Third: (1)

---

[7] Samuel Zamias, one of the Zamias Guarantors, died in September 2013. (*Id.* at ¶ 57.)

fraud; (2) tortious interference with contractual relations; (3) breach of duties of good faith and fair dealing; (4) accounting; (5) fraud in the inducement; and (6) predatory lending practices. (ECF No. 1-2 at 17-23.) Fifth Third removed the case to this Court on August 18, 2017. (ECF No. 1.) On August 25, 2017, Fifth Third filed a Motion to Dismiss. (ECF No. 4.) On September 5, 2017, Plaintiffs filed a Motion to Remand Based on Abstention. (ECF No. 7.)

On January 9, 2018, the Court entered a Memorandum Opinion and Order denying Plaintiffs' Motion to Remand and granting in part, and denying in part, Fifth Third's Motion to Dismiss. (ECF No. 26.) The Court denied Fifth Third's Motion to Dismiss Plaintiffs' tortious interference claim (Count 2) in regards to the allegations that were not barred by the statute of limitations. (Id. at 40.) The Court granted Fifth Third's Motion to Dismiss Plaintiffs' fraud claim (Count 1), fraudulent inducement claim (Count 5), equitable accounting claim (Count 4), and predatory lending claim (Count 6), which were dismissed with prejudice. (Id.) The Court granted Fifth Third's Motion to Dismiss Plaintiffs' claims of breach of the covenant of good faith and fair dealing (Count 3) and legal accounting (Count 4), but granted Plaintiffs leave to amend these claims. (*Id.*) The Court also granted Plaintiffs leave to amend to plead a breach of contract claim. (*Id.* at 38.)

Plaintiffs filed a three-count Amended Complaint on February 7, 2018, asserting claims of breach of contract, legal accounting, and tortious interference with contractual relations. (ECF No. 28.) Plaintiffs filed their Amended Complaint 16 days after the deadline for filing an Amended Complaint had passed. Fifth Third filed a Motion to Strike the Amended Complaint. (ECF No. 29.) The Court denied Fifth Third's Motion to Strike. (ECF No. 34.)

7

After the Court denied Fifth Third's Motion to Strike, Fifth Third filed an Answer to the Amended Complaint (ECF No. 35) and a Motion for Judgment on the Pleadings. (ECF No. 36.) Plaintiffs never responded to Fifth Third's Motion for Judgment on the Pleadings. Instead, Plaintiffs filed a Motion for Voluntary Dismissal (ECF No. 38), which this Court denied (ECF No. 40).

Because Plaintiffs filed their Motion for Voluntary Dismissal in lieu of a response to Fifth Third's Motion for Judgment on the Pleadings, the Court determined to provide to Plaintiffs a period of fourteen days within which to file a response to Fifth Third's Motion for Judgment on the Pleadings. (*Id.*) Plaintiffs filed a brief response in which they explain that they lack the financial resources to continue to pursue this litigation. (ECF No. 41 at 4-5.) Plaintiffs request that the court either permit Plaintiffs to voluntarily dismiss their case (a request which this Court already denied) or, in the alternative, that the Court grant Fifth Third's Motion for Judgment on the Pleadings. (*Id.*)

## III. Legal Standard

"The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Kaite v. Altoona Student Transp., Inc.*, 296 F. Supp. 3d 736, 739 (W.D. Pa. Oct. 30, 2017) (Gibson, J.); *see Harleysville INS. Co. of New York v. Cerciello*, No. 3:08-CV-2060, 2010 WL 11534317, at *2 (M.D. Pa. Apr. 26, 2010) ("The standard of review used for a motion for judgment on the pleadings is substantively identical to that of a motion to dismiss."); *see also Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011).

8

Either motion may be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *id.* at 12(h)(2)(B). The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(b); *id.* at 12(c); *Cerciello*, 2010 WL 11534317, at 2. "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.*, No. CV 3:16-29, 2016 WL 4581350, at *1 (W.D. Pa. Sep. 1, 2016) (citing *Perelman v. Perelman*, 919 F. Supp. 2d 512, 521 (E.D. Pa. 2013)).

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But, detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[8] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not

---

[8] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (2010)).

9

entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because a motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss, "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017); *see also Thompson v. Med-Mizer, Inc.*, No. 10-CV-02058, 2012 WL 12903830, at *1 (E.D. Pa. July 31, 2012) (when ruling on a defendant's motion for judgment on the pleadings, "all factual averments in plaintiff's Complaint must be accepted as true.") (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

## IV. Discussion

Plaintiffs assert three claims in their Amended Complaint. The Court will examine these claims in turn. As the Court explains below, the Court will grant Fifth Third's Motion in its entirety.

### A. The Court Will Grant Fifth Third's Motion to Dismiss Plaintiffs' Breach of Contract Claim (Count 1) Because Plaintiffs Failed to Plead a Plausible Breach of Contract Claim

Plaintiffs allege Judge Deller's Order Confirming the Sale of Property explicitly or implicitly required that that Fifth Third credit Plaintiffs and/or Taylor Associates with the $6,100,000 credit bid that Fifth Third paid for the Taylor Commons property.[9] (ECF No. 28 at 16-17.) At this juncture, the Court must observe that Plaintiffs' Amended Complaint is not an exemplar of clarity. But it appears that Plaintiffs allege that Fifth Third breached Judge Deller's Order by failing to credit Plaintiffs and/or Taylor Associates with the value of Fifth Third's credit bid. (*See id.*).

In response, Fifth Third contends that Plaintiffs failed to plead the existence of a valid contract between the parties. (ECF No. 37 at 13.) Fifth Third argues that Judge Deller's Settlement Order is not a contract, but rather a court order. (*Id.* at 13-14.) Fifth Third avers that if Plaintiffs believe that Fifth Third violated an aspect of Judge Deller's Order, they may file a motion before Judge Deller to hold Fifth Third in contempt, but may not sue for breach of contract.[10] (*Id.*)

"To state a claim for breach of contract under Pennsylvania law, a plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) the defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the

---

[9] The Court notes that Plaintiffs attached Judge Deller's Order to their Amended Complaint. (*See* ECF No. 28-1.)

[10] Fifth Third also argues that it entered into a Settlement Agreement with Plaintiffs that forecloses Plaintiffs' breach of contract claim. (*See* ECF No. 37 at 6-12.) Fifth Third contends that the Court may rely on the Settlement Agreement at the Motion to Dismiss stage because it is "integral to" Plaintiffs' Amended Complaint. (*Id.* at 7-8.) The Court need not consider this argument because, as explained above, Plaintiffs failed to plead a plausible breach of contract claim without reference to the purported Settlement Agreement.

11

breach." *Angino v. Wells Fargo Bank, N.A.*, 666 Fed. Appx. 204, 207 (3d Cir. 2016) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)); *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 625 (W.D. Pa. 2013) (Conti, J.) (citing *Ware*, 322 F.3d at 225); *Parisi v. State Farm Mut. Auto. Ins. Co.*, No. CV 3:16-179, 2018 WL 2107774, at *9 (W.D. Pa. May 7, 2018) (Gibson, J.)

The Court agrees with Fifth Third that Plaintiffs failed to plead the existence of a valid contract. Numerous federal courts have held that a court order is not a contract. *See, e.g., Ketab Corp. v. Mesriani Law Grp.*, No. CV1407241RSWLMRWX, 2016 WL 5920291, at *9 (C.D. Cal. Jan. 29, 2016) (dismissing breach of contract claim because "a Settlement Order is not a contract, but, rather, a court order."); *Ketab Corp. v. Mesriani Law Grp.*, No. CV1407241RSWLMRWX, 2016 WL 911816, at *4 (C.D. Cal. Mar. 7, 2016) (denying motion for reconsideration after court dismissed plaintiff's breach of contract claim because "the Settlement Order is a court order, and not a contract."); *Cavadi v. Bank of Am., N.A.*, No. CV-07-224-PB, 2008 WL 901403, at *3 (D.N.H. Apr. 1, 2008) (granting motion to dismiss breach of contract claim that alleged that defendant violated court order because "the court order was a court order, not a contract," and explaining that "the appropriate method for dealing with a party's alleged violation of a court order is not to seek contract damages for violation of an imaginary covenant, but rather to invoke the court's contempt powers."); *see also Arnold v. Dodge*, No. 15-CV-1727, 2015 WL 7681248, at *1 (W.D. La. Oct. 15, 2015) (dismissing breach of contract claim because, among other reasons, "an order granting pauper status is a court order, not a contract between parties.") Plaintiffs have failed to cite any case holding that a court order is a contract that may form the basis of a breach claim, and this Court is aware of none.

12

Accepting Plaintiffs' asserted facts as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs' Amended Complaint fails to state a valid contract between Plaintiffs and Fifth Third. Thus, the Court easily holds that Plaintiffs failed to state a plausible claim for breach of contract. Therefore, the Court will dismiss Plaintiffs' breach of contract claim. *See Iqbal*, 556 U.S. at 679.

### B. The Court Will Grant Fifth Third's Motion to Dismiss Plaintiffs' Claim for Legal Accounting (Count 2) Because Pennsylvania Law Does Not Recognize a Claim for Legal Accounting Absent a Claim for Breach of Contract

Plaintiffs claim that Fifth Third failed to provide an appraisal, accounting, or credit for the transfer of the Taylor Project. (ECF No. 28 at 18-19.) Plaintiffs assert a legal accounting claim seeking to force Fifth Third to "provide a legal accounting for its disposition of the proceeds from any sale of the Taylor Commons property." (*Id.* at 20.) In response, Fifth Third contends that Plaintiffs' legal accounting claim cannot stand in the event that the Court dismisses (as it has above) Plaintiffs' breach of contract claim. (ECF No. 37 at 18.)

"A legal accounting is not a claim, but a demand for relief." *Canfield v. Statoil USA Onshore Props. Inc.*, No. CV 3:16-0085, 2017 WL 1078184, at *25 (M.D. Pa. Mar. 22, 2017) (citing Pa. R. Civ. P. 1021(a)). "A legal accounting 'is merely an incident to a proper assumpsit claim.'" *Sullivan v. Rankin*, No. 1:16-CV-2546, 2017 WL 4544619, at *6 (M.D. Pa. Sept. 29, 2017) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. Super. Ct. 1987)). An assumpsit claim is a "common-law action for breach of such a promise or for breach of a contract." *Rankin*, 2017 WL 4544619, at *6 (internal citations and quotation marks omitted). Accordingly, "the right to an accounting at law is a form of relief that attaches only where the defendant has breached a valid contract with the plaintiff." *Lightman*, 2012 WL 1344378, at *4 (citing *Haft v. U.S. Steel Corp.*, 499

A.2d 676, 677–78 (Pa. Super. Ct. 1985)). "Thus, a legal accounting requires a valid contract, either express or implied, and a breach of that contract." *Canfield*, 2017 WL 1078184, at *25 (internal citations omitted).

The Court will dismiss Plaintiffs' legal accounting claim. Because Plaintiffs failed to plead a plausible contract between Plaintiffs and Fifth Third, Plaintiffs have no ground for demanding an accounting from Fifth Third. *See Rankin*, 2017 WL 4544619, at *6 (dismissing legal accounting claim because court dismissed accompanying breach of contract claim).

C. **The Court Will Dismiss Plaintiffs' Claim for Tortious Interference with Contractual Relations (Count 3) Because Plaintiffs Have Failed to Allege that Any Third-Party Breached or Failed to Perform Its Obligations to Plaintiffs**

Plaintiffs allege that Fifth Third tortuously interfered with their contractual relations by "requir[ing]" them to "execute pledges and collateral assignments of the partnership interests on numerous other projects" as collateral for the Forbearance Agreement and Second Modification of the Loan Agreement. (*See* ECF No. 28 at pp. 8; 20-21.) Plaintiffs allege that "the assignment of these [p]ledges" directly violated "the loan agreements for each and every one of those projects." (*Id.* at 11.) Plaintiffs further contend that Fifth Third set a "release price" for each pledged property—the price at which Plaintiffs "could essentially buy their way out of each [p]ledge"—and that each time a pledged property was refinanced or sold, "Fifth Third would insert itself into the process in an attempt to shake down the parties for not only the release prices, but any additional money it could get." (*Id.* at 21.) According to Plaintiffs, Fifth Third's actions caused Plaintiffs to incur additional costs and attorneys' fees. (*Id.* at 22.)

In response, Fifth Third asserts that Plaintiffs failed to allege a plausible claim for tortious interference because (1) Plaintiffs failed to allege that they were parties to the contracts at issue

14

(ECF No. 39 at 19), (2) Plaintiffs failed to plead tortious conduct because they failed to allege that any third-party failed to perform its obligations to Plaintiffs due to Fifth Third's conduct (*id.* at 21), and (3) Plaintiffs failed to allege that Fifth Third lacked privilege for its actions. (*Id.* at 21.)

"Under Pennsylvania law, to prevail on a claim for tortious interference with existing . . . contractual relationships, a party must prove: (1) the existence of a contractual . . . or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship . . .; (3) the absence of privilege or justification on the part of the defendant; [and] (4) legal damage to the plaintiff as a result of the defendant's conduct . . . ."*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998)).

Plaintiffs failed to plead a plausible tortious interference claim. While, contrary to Fifth Third's contention, Plaintiffs pleaded the existence of a contract between them and a third-party—Plaintiffs asserted that the pledges directly violated "the loan agreements for each and every one of those projects" (ECF No. 28 at 11)—the Court agrees with Fifth Third that Plaintiffs failed to plead the second element of a tortious interference claim—tortious conduct. As the Third Circuit recently held, interpreting Pennsylvania law, "the bulk of the case law, as well as the plain language of . . . section 766 [of the Restatement (Second) of Torts (1979), which the Supreme Court of Pennsylvania has adopted], mandates that a plaintiff bringing an intentional interference claim must allege breach or nonperformance." *Dommel Props. LLC v. Jonestown Bank & Tr. Co.*, 626 F. App'x 361, 367 (3d Cir. 2015) (quoting *Dreiling Millennium Tr. II v. Reliant Renal Care, Inc.*, 833 F. Supp. 2d 429, 434 (E.D. Pa. June 30, 2011)); *Glob. Arena, LLC v. Eterpreting, LLC*, No. CV 16-3634, 2016 WL 7156396, at *2 (E.D. Pa. Dec. 8, 2016) (holding that "[a]llegations of breach or

nonperformance are necessary" to state a tortious interference claim under Pennsylvania law). Based on the Court's reading of the Amended Complaint, Plaintiffs have not alleged that any third-party breached its contractual obligations to Plaintiffs as a result of Fifth Third's actions. Accordingly, Plaintiffs failed to assert a plausible tortious interference claim. *See Dommel Props. LLC*, 626 F. App'x at 367.

## V. Conclusion

In conclusion, Plaintiffs failed to state a plausible breach of contract claim because they allege that Fifth Third violated a court order, not a contract. Plaintiffs further failed to plead a plausible legal accounting claim because a claim for legal accounting cannot stand absent a viable breach of contract claim. And Plaintiffs failed to plead a plausible tortious interference claim because Plaintiffs failed to allege that any third-party breached or otherwise failed to perform its contract with Plaintiffs due to Fifth Third's conduct. Therefore, the Court will grant Fifth Third's Motion in full and dismiss all of Plaintiffs' remaining claims.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE ZAMIAS, ESTATE OF MARIANNA ZAMIAS, individually and as co-executor of the Estate of Marianna Zamias, STEPHEN ZAMIAS, individually and as co-executor of the Estate of Marianna Zamias, ESTATE OF SAMUEL ZAMIAS, DECEASED, Kathleen Zamias, Executor, <br><br> Plaintiffs, <br><br> v. <br><br> FIFTH THIRD BANK, <br><br> Defendant. | Case No. 3:17-cv-153 <br><br><br><br><br><br><br><br> JUDGE KIM R. GIBSON |

## ORDER

AND NOW, this 16th day of July, 2018, upon consideration of Fifth Third's Motion for Judgment on the Pleadings (ECF No. 36), and in accordance with the attached memorandum opinion, **IT IS HEREBY ORDERED** that the Court **GRANTS** Fifth Third's Motion in full. The Clerk is directed to close the case.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE